In the Matter of the Estate of ELIZA JANE JOHNSTON, Deceased. ·

**Wills:** CHARITABLE BEQUEST: UNCERTAINTY.  A bequest for charitable purposes will be given effect if it can be done consistently with established rules.  The will in question bequeathed a certain sum to a particular Presbyterian Church of which the testator was a member, and by a further provision gave to home and foreign missions a sum to be equally divided.  The church was a part of the national organization, with a board of home missions and a board of foreign missions, to which the church contributed to assist them in carrying on their charitable enterprises.  *Held,* that the testator intended the bequest for the boards of the home and foreign missions and was not void for uncertainty.—Ladd and McClain, JJ., dissenting.

*Appeal from Tama District Court.*—HON. C. B. BRADSHAW, Judge.

TUESDAY, JANUARY 26, 1909.

THE executor of the estate of Eliza Jane Johnston reported the net assets of such estate, after payment of the costs of administration, to be $2,008.85. As this was less than the aggregate amount of the legacies, the executor prayed for a construction of the will as a basis of distribution.  In the second item of the will $300 was bequeathed to one daughter, $800 to another, and $900 to

a son. In the third item $300 was given to the First Presbyterian Church of Toledo, Iowa, of which the testatrix was a member, on conditions which do not appear to have been complied with. Item 4: "I further give, devise and bequeath to home and foreign missions two hundred dollars in money to be divided equally share and share alike." The next item directs the erection of a monument, concerning which no showing was made, and that following disposes of the residue of the estate. The board of Foreign Missions of the Presbyterian Church of the United States, the Board of Home Missions of the same church, as well as the Presbytery of Waterloo, and the Presbyterian Church of Toledo, joined in asking a construction of the will, and alleged that the first two were incorporated bodies, maintained by the Presbyterian Church of the United States for the advancement of Christianity at home and abroad throughout the world; that the church at Toledo is incorporated as part of the Presbytery of Waterloo, and embraced in the Presbyterian Church of the United States; that the church at Toledo makes contributions to the boards mentioned at stated intervals, to enable them to carry on their charitable purposes. They pray the bequest in item 4 be sustained as valid. The executors admitted the facts alleged, but insisted that these were not sufficient to identify the beneficiaries under this item of the will. Item 4 of the will was adjudged invalid, and distribution directed accordingly. The two boards, Presbytery, and church appeal.— *Reversed.*

*J. R. Caldwell,* for appellant.

*C. E. Walters,* for appellee.

LADD, J.—The sole inquiry is whether the clause bequeathing "to home and foreign missions two hundred

dollars in money to be divided equally share and share
alike" is sufficiently certain to enable the court to give it
effect.   In the clause immediately preceding testatrix gave
conditionally to the Presbyterian Church of Toledo, of
which she was a member, and it was admitted that that
church is a part of the Presbytery of Waterloo, and em-
braced in the Presbyterian Church of the United States,
which maintains a board of foreign missions and a board
of home missions, both being incorporated, for the ad-
vancement of Christianity at home and abroad, and to
which the church at Toledo made contributions at stated
intervals to enable them to carry on their charitable enter-
prises.   These extrinsic facts may be considered as tending
to identify the objects of testatrix's bounty from the de-
scription contained in the will, and the only controversy
is whether they are sufficient for that purpose.   Charitable
gifts are strongly favored.   The courts will carry them
into effect if this can be done consistently with established
rules of law.   Indeed it is said that courts never construe
a charitable bequest void unless it is so absolutely dark
that they can not find out the testator's meaning.   The
extrinsic facts are important as indicating the situation in
which testatrix stood when she made the bequest.   As a
member of the Presbyterian Church, she was likely to have
been interested in its religious and charitable enterprises,
and may have aided in their support.   In a previous clause
she had remembered the local church, and in the opinion
of the majority of the members of this court it is to be
inferred therefrom, and the fact of her connection with
that church, that she intended the bounty bestowed on
home and foreign missions to go to the boards of home and
foreign missions to whose maintenance the church con-
tributed.   This conclusion is said to have support in the
authorities.   In *Hinckley v. Thatcher,* 139 Mass. 477 (1
N. E. 840, 52 Am. Rep. 719), the deceased had willed the
residue of his estate "equally to the authorized agents of

the Home and Foreign Missionary Societies to aid in propagating the holy religion of Jesus Christ," and the court held that, in view of his membership of a Congregational church, and his interest as manifested in the American Board of Commissioners for Foreign Missions and Massachusetts Home Missionary Society, these were intended by the testator. In *Brewster v. McCall's Devisees,* 15 Conn. 274, the devise was to the "Missionary Society for Foreign Missions," and the extrinsic evidence was held sufficient to identify, from this description, the "American Board of Commissioners for Foreign Missions." See *Kinney v. Kinney,* 86 Ky. 610 (6 South. 593); *Board of Foreign Missions of Presbyterian Church v. Culp,* 151 Pa. 467 (25 Atl. 117). In *Gilmer v. Stone,* 120 U. S. 586 (7 Sup. Ct. 689, 30 L. Ed. 734) the gift was of the residue of the "estate to be equally divided between the board of foreign and the board of home missions," and the court held that evidence of testator's active membership of the Presbyterian Church; that collections were annually taken for the support of such boards of the Presbyterian Church, though without designating the church, and transmitted to such boards in connection with the preceding requests to the library of the local Presbyterian Church, for the erection of another church, and for the pastor's salary—sufficiently identified the beneficiaries as the boards of home and foreign missions of that denomination.

It is to be noted that in none of these decisions were the gifts directly to the missions, as in this case, but it may be assumed, as is thought by the majority, that testatrix intended her bounty to be bestowed through the ordinary and usual channels of the church provided for the distribution of such charity, and therefor the gift should be construed as intended for the boards of home and foreign missions of that denomination. See *Domestic and Foreign Missionary Society's Appeal,* 30 Pa. 425. The

writer with whom Mr. Justice McClain concurs is not able to go to the extent here required to sustain even a charitable gift, but is of the opinion that the will, when considered in connection with all the extrinsic facts, fails to identify the objects of testatrix's bounty. There is nothing in the record to indicate, save her membership of the local church, that she was interested in the missionary boards claiming the fund, or that she had ever participated actively in the charities of her church. In these respects the case is to be distinguished from those cited. Moreover, as she was not shown to be interested in missions generally, there seems to be no ground for thinking she intended her bounty for distribution among all the missions of the church rather than to some particular ones out of the innumerable enterprises of the kind in the different parts of the world. Nor do I think mere membership of a church enough without more to indicate that the design was to give to the missions of that denomination rather than to those of some other church or to the missions of all churches. In other words, it seems to me to be merely a matter of conjecture what she intended, and that the court, under the guise of a liberal construction, is not expounding and enforcing, but really making a new will. The precise question was before the Supreme Court of North Carolina in *Bridges v. Pleasants,* 39 N. C. 26 (44 Am. Dec. 94) where certain bequests were to be applied to foreign and home missions. In deciding the beneficiaries too uncertain the court said: "It is impossible from anything appearing in the will to conjecture how, by whom, or in whose favor these sums of money were to be administered; what kind of 'foreign missions,' whether diplomatic or religious, or if the latter, of what sect or what country no man can say. So likewise of 'home missions.' The distinction between a gift direct to charity not a trust, and one to a trustee to be by him applied to a charity, should not be lost sight of. In the

former the court turns over the fund to the charity as a ministerial act, and the objects of the bounty must be sufficiently certain to enable it to ascertain who are intended. In the latter the trustee is endowed with the power of selecting such objects, precisely as the testator might have done. In my opinion this was a direct gift, and the beneficiaries so uncertain as to render the, bequest void. However, the majority think otherwise, and necessarily I yield, though not with reluctance, for, as once remarked by Chief Justice Wilmot in applying the doctrine of *cy pres,* 'one kind of charity will embalm testatrix's memory as well as another.' "

It follows that the clause of the will assailed is adjudged valid, and the judgment of the district court *reversed.*